Gilpatrick *v.* Sayward.

---

## GILPATRICK *vs.* SAYWARD.

A farm being purchased, and sureties given for part of the purchase-money, the deed was made, by consent, to the sureties only, for their indemnity against the note they had signed. Afterwards they refused to give up the deed to the real purchaser, on being discharged of their suretyship, without the payment of fifty dollars to each of them; which the purchaser paid, the farm being of considerable value, without making any objection to the amount. It was held that he could not recover back the money thus paid.

THIS was assumpsit for money had and received. At the trial before *Parris J.* it appeared that the plaintiff had made a parol

Gilpatrick v. Sayward.

agreement for the purchase of a farm, at the price of twelve hundred dollars; for which he paid six hundred dollars at the time, and procured the defendant, and two others, to become his sureties in a promissory note for the residue; and for indemnity against their liability on the note, it was agreed that the deed should be made to them alone. It was accordingly so made, and left with an attorney; who testified that he advised that the deed should not be recorded, because the grantors were responsible men, and he supposed the negotiation was not finished; but yet that he thought he should have been justified in delivering the deed to the sureties, if they had called for it.

After some months, he real purchaser having made a bargain for the sale of the land, in order to pay off the note, payment of which, however, had never been demanded of the sureties, he applied to them to give up the deed; which the defendant expressed his willingness to do; and when compensation for his trouble was spoken of, he considered it trifling, and deemed six or ten dollars a liberal allowance. But afterwards he, with the other sureties, refused to give up the deed, on being discharged of their suretyship, without receiving fifty dollars each; which the plaintiff paid, without making any objection to the amount; and brought this action to recover the sum paid to the defendant.

Upon these facts, the counsel for the defendant requested the Judge to instruct the jury that if they believed that the deed to the sureties was at their control, and that they had a right to cause it to be recorded at their pleasure, then the fee was vested in them; and that any parol agreement to deliver up the deed, upon being discharged of their suretyship, was void by the statute of frauds. But this the Judge declined to do; and a verdict being returned for the plaintiff, the point was reserved for the consideration of the court.

D. Goodenow, for the defendant, to show that the action was barred by the statute of frauds, cited Pitts v. Waugh & al. 4. Mass. 424. Baker v. Jewell 6. Mass. 460. Boyd v. Stone 11. Mass. 342. Bliss v. Thompson 4. Mass. 488. Sherburne v. Fuller 5. Mass. 153.

Gilpatrick *v.* Sayward.

*J. Holmes,* for the plaintiff, contended that the money was obtained from him by extortion, and taking an undue advantage of his situation. The deed was left with the attorney for the sole purpose of indemnity to the sureties against their liability. No other object or damage was ever pretended. To withhold the deed, after this purpose was accomplished, was a fraud. And the plaintiff, being placed, by the bad faith of the defendant and his partners, in a situation where he must pay one hundred and fifty dollars, or lose twelve hundred, was compelled, by a moral necessity, to yield to their demand, however unjust. Money thus obtained, neither equity nor law will allow the party to retain. 2. *Poth. Obl.* 380. *Astley v. Reynolds* 2. *Stra.* 915. *Smith v. Bromley,* *Doug.* 696, note. *Moses v. Macferlan* 2. *Burr.* 1012. *Dutch v. Warren* 1. *Stra.* 406. 7. *Johns.* 240. The case of *Hall v. Shultz* 4. *Johns.* 240, materially differed from this, because there the defendant had actually paid his own money to purchase the land, and took the conveyance to himself, under an agreement that the fee should vest in him, as in fact and in law it did. But the reasoning of *Thompson J.* in that case is strong to the point now contended for ; and is supported by *Shepherd v. Little* 14. *Johns.* 210.

WESTON J. delivered the opinion of the Court, at the succeeding term in *Cumberland.*

It is the policy of the statute of frauds to require written evidence of certain contracts, for the purpose of security against the frailty of memory on the one hand, and fraud and perjury on the other. The wisdom of this policy has been generally approved, and might be illustrated, if necessary, by a consideration of the insecurity and uncertainty to which important rights, especially in relation to real estate, would be exposed, if the law was changed by the legislature, or relaxed by judicial construction. In a community where almost every individual is able to write, it imposes no unreasonable burthen ; and indeed requires nothing more than what is dictated by common prudence, and a due regard to valuable interests., It will sometimes happen that men, who do not feel the force of moral obli-

gation, will avail themselves of the rule, to escape from the performance of contracts, which, in equity and good conscience, they ought to fulfill. It is to be regretted that instances of this kind should occur, where the law cannot afford adequate relief. They arise from the unavoidable operation of general rules. It is not the fault of the law, that parties are thus exposed to suffer. It is because they are too confiding, and neglect the forms and precautions which the law has provided for their security and protection.

In the case before us, by the appointment of all the parties in interest, land of considerable value was conveyed, by an absolute deed, to the defendant and two other persons. They paid no part of the consideration, although they had become sureties for the plaintiff for a portion of it, from the payment of which, however, they were ultimately relieved. There was no declaration of trust in writing; nor did they enter into any written contract to convey the land to him, or to any other person whom he might appoint. The plaintiff had placed himself in their power; and they could have held the land, however unconscientious such a course might have been, in defiance of any legal remedy. They stopped short of the extreme point of injustice, to which they might have gone, if they had availed themselves, to the utmost extent, of the legal advantage they derived from the mistaken confidence reposed by the plaintiff in their honor and integrity. They insisted that the plaintiff should pay a sum equal to about one eighth of the value of the land, and he, finding he could obtain no terms more favorable, deemed it prudent to pay what they required. He now brings this action, to recover back the sum received by the defendant.

A moral obligation has been held a sufficient consideration for an express promise; but the law does not imply a promise, except upon the basis of a legal obligation. A contract for the conveyance of real estate, or of any interest in it, not reduced to writing and signed by the party to be charged, or his authorized agent, does not create an obligation of the latter kind. The law takes no notice of it as the foundation of legal rights. The grantees, in the case under consideration, were the legal owners of the land; they relinquished it for a stipulated sum; and this sum, received upon a legal consideration,

they will be suffered to retain, notwithstanding they may have refused to perform a contract, which the law does not enforce.

It has been often laid down as a general proposition, that the law implies a promise to pay or refund money, which in equity and good conscience ought not to be withheld. The generality however of this rule is not without qualification The law lends not its aid to enforce equities, *however binding* in conscience, which are not founded upon a legal consideration. It is undoubtedly equitable that co-trespassers upon the person or property of another, should contribute in the payment of satisfaction to the party injured; and yet if one pay voluntarily, or be compelled to do so by suit, he has no remedy for contribution. The law will not enforce express promises, nor raise implied ones, which are against public policy, or which indirectly tend to defeat its rules. If the principle of equity and good conscience, according to the moral sense of mankind, is to be a basis upon which the law will, without exception, imply an *assumpsit*, the policy of the statute of frauds may be greatly impaired. A party is under a parol contract, binding in conscience but not at law, to convey real estate. He refuses to do it. The party contracted with purchases and obtains a conveyance, upon the payment of a sum of money as a new consideration. If upon these facts, an action lies to recover back the money, the law is indirectly made the instrument of defeating its own principles. If the purchaser *of real estate could recover back the purchase money,* whenever he could prove a parol trust against the vendor, and thus establish the fact that the consideration was retained against equity and good conscience, it would be to no purpose that, by the policy of the law, all trusts not declared in writing, except such as arise by implication of law, are disregarded.

In the case of *Hall v. Shultz*, 4 *Johns.* 240, the plaintiff presented a strong case in equity, arising from hard and oppressive conduct, on the part of the defendant. A farm of the plaintiff's worth eight thousand dollars, was about to be sold by the sheriff at auction, on an execution against him. Not being able at that time to command the money, he procured the defendant to purchase it in for him; under a parol agreement that the defendant should reconvey to the plaintiff, upon being refunded the purchase money and inter-

est; and, as one witness testified, a reasonable compensation for his trouble. The defendant bought the farm for about three thousand dollars; but refused to reconvey to the plaintiff, except upon the repayment of the principal and interest advanced, with the further sum of three hundred dollars. The plaintiff complained of this exaction, as a violation of their agreement; but not being able to obtain better terms, he paid the money required, and took a reconveyance of the land. He then brought *assumpsit* to recover back the three hundred dollars. *Thompson J.* was for supporting the action; and he adduced authorities, and urged, with great ability, every argument which could be brought to bear in aid of his opinion. But he did not satisfy his brethren, *Kent C. J., Spencer, Van Ness* and *Yates,* Justices, who concurred in deciding that, hard as the plaintiff's case was, he was remediless, the defendant being protected by the statute of frauds.

It has been contended in argument, that the opinion of Justice *Thompson* was confirmed by the subsequent case of *Shepherd v. Little,* 14 *Johns.* 210; but it will be found upon examination, that in that case it was only decided, that *assumpsit* will lie for the price of land conveyed, notwithstanding the consideration is formally acknowledged by the deed to have been received.

*New trial granted.*